UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>vs.<br><br>ADELBERTO MAGANA-GONZALEZ,<br><br>Defendant. | CASE NO. 17CR3077-LAB<br><br>**ORDER PARTIALLY GRANTING SUPPLEMENTAL DISCOVERY REQUEST**<br><br>[Doc. #31] |
|---|---|

During a hearing on January 22, 2018, the Court heard additional argument supporting and opposing defendant's second supplemental motion for discovery. The defendant seeks broad discovery – records and reports going back 5 years – relating to aliens caught entering the United States in the district of Arizona, who upon being apprehended alleged that they had been forced to carry drugs into the U.S. by backpack. The ostensible materiality for this request is set forth in a sworn declaration of the defendant. He states "An armed man in Tijuana, Mexico, who threatened me to cross a backpack of drugs into the United States told me that one of the three locations where I would be forced to cross a backpack of drugs into the United States was Arizona."

This is a new statement that elaborates on the statement the defendant made to Border Patrol agents after he was arrested. In his earlier statement, when asked by the

agent if he was supposed to cross drugs near Calexico, the defendant replied: "Not exactly, because they don't tell you, but . . . I think they were also going through Arizona, *but I don't know where.*"

In opposition to the supplemental discovery request, the Government points out that later during the post arrest interview, the defendant disavowed that he had been forced to import drugs or that drugs or coercion had anything to do with his motivation for crossing the border. According to the Government, by the end of the interview, the defendant admitted that the reason he entered was to visit his mother. Supporting this version of events is the uncontested fact that, when apprehended, the defendant was not carrying drugs in a backpack and, in fact, he denied bringing drugs into the U.S.

The Court has credibility concerns about the defendant's recent elaboration of his post arrest statement. The defendant's original statement was speculative and uncertain ("I think. . . Arizona . . . but I don't know where"), and provided no real support for his request to canvass reports and information from Arizona. Only after the Court voiced concern that the original statement was equivocal and uncertain and, as such, did not support his request for broad discovery concerning crossings in Arizona, did the defendant offer a more definitive statement about where he was to cross into the U.S. If indeed the defendant was told he might have to cross in Arizona, it's curious why he didn't say so specifically to the interrogating agent. It's also curious that his elaboration wasn't mentioned in his original motion for discovery.

Although the Court is not sold on the bona fides of the defendant's more definitive statement, the statement does provide slightly more support for his request. There is still no evidence that reports of duress from Arizona are actually connected or have any relationship to the Tijuana operative who supposedly threatened the defendant to backpack drugs into the U.S. And that proposition seems unlikely. In recent years, nearly half (47%) of illegal border crossings into the U.S. occurred along the Arizona border with Mexico. "Deportable Aliens Located by Program and Border Patrol Sector and Investigations Special Agent in Charge (SAC) Jurisdiction: Fiscal Years 2001 to 2010," Table 35, Yearbook of Immigration

Statistics: 2010, **http://www.dhs.gov/files/statistics/publications/YrBk10En.shtm**. Given the large number of illegal aliens who cross the Arizona-Mexico border, why would a drug organization recruit drug couriers from Tijuana who would have to be transported hundreds of miles away to Arizona to cross drugs? Wouldn't it be easier and more cost effective simply to use the large population of local illegal crossers? In making these observations, the Court is mindful that Rule 16 does not place geographical limits on a defendant's ability to seek material evidence. But the more attenuated the connection between the evidence and the defendant's theory of defense, the less material the evidence. *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990) ("[G]eneral description[s] of the information sought [or] conclusory allegations of materiality" are insufficient). Here, the lack of any clear connection between the smuggling proposition that was supposedly put to the defendant near San Diego and illegal alien crossings in Arizona greatly diminishes the potential materiality of the information sought.

The information sought by the defendant will also be burdensome to collect and likely inadmissible in the form in which it exists. The Government has represented that the Border Patrol does not index information in a way that would allow the Department of Homeland Security to readily identify reports by aliens that they were forced to cross drugs. Defense counsel has proffered a March 27, 2014 DHS bulletin from the Tucson, Arizona sector that states: "Smugglers continue to victimize illegal immigrants by exposing them to dangerous situations, including being forced to carry narcotics, long walks through isolated terrain, and the threat of violence and abandonment." But the bulletin doesn't relate the frequency with which aliens report being forced to cross into the U.S. with drugs, and makes no mention of methods being used in the San Diego sector. In addition, even if such reports are documented, it is hard to conceive how the reports would be admissible in the defendant's trial. Presumably, the reports contain unverified claims of duress made by aliens who were apprehended by Border Patrol agents in the Arizona sector. The aliens' statements would only be relevant and admissible if offered for the truth of the matter asserted, and therefore would be hearsay if offered through the agents who have no first-hand knowledge of their

truth. While the Court realizes that admissibility of the evidence is not the linchpin for materiality under Rule 16, an obvious lack of admissibility of the evidence surely cuts against a finding of materiality. *United States v. Hernandez-Meza*, 720 F.3d 760, 768 (9th Cir. 2013) (test for materiality is not whether the discovery is admissible at trial, but whether the discovery may assist the defendant in formulating a defense, including leading to admissible evidence); *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993) ("[E]vidence is material as long as there is a strong indication that it will play an important role in uncovering admissible evidence).

There is also the issue of proportionality, *i.e.*, is the evidence material enough to justify the burden of its production? Here the burden of production would be great. The Government proffers that to comply with the requested discovery order would necessitate hundreds of man hours spent hand searching non-digitized reports and files. The Government represents that there are insufficient DHS personnel to perform such tasks, and the likely consequence if the Court grants such broad discovery is that the Government will move to dismiss this case. The Court has already imposed an unusual burden on the United States in this case to canvass agents in the San Diego sector to determine whether any of them within the past year received a report from an undocumented person crossing the border that he or she was being forced to bring in drugs. No positive responses were received to an email sent by a Border Patrol supervisor to all San Diego sector Border Patrol agents instructing them to report such anecdotes. In an abundance of caution, however, the Court recommended to the prosecutor that the same email be circulated to Border Patrol agents in the Tucson sector. The prosecutor was noncommittal as to whether she would follow the Court's recommendation.

After further reflection (and accustomed to being second-guessed by the Ninth Circuit Court of Appeals), the Court is unwilling to chance the risk of reversal when a further simple step can be taken to reasonably accommodate the defendant's discovery request.

The Court **PARTIALLY GRANTS** the defense supplemental request for discovery. The Government, acting through DHS, shall canvass by email Border Patrol agents assigned

to the Tucson sector, requesting that they relate any report made to them within one year prior to the date of offense in this case by any undocumented alien who was apprehended crossing the Arizona-Mexico border who claimed that he or she was forced to cross into the U.S. carrying drugs. The email shall be circulated to agents no later than ***February 9, 2018***, and shall state that time is of the essence in responding. Any positive response to the email shall be promptly transmitted by DHS to the Assistant United States Attorney on this case who shall in turn, promptly provide it to defense counsel.

Nothing in this Order presumes the admissibility of any material that may be produced pursuant to the Order.

**IT IS SO ORDERED**.

DATED: February 6, 2018

*[signature]*

**HONORABLE LARRY ALAN BURNS**
United States District Judge

- 5 -

17CR3077